UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPCP GROUP, LLC,

                Plaintiff,

       v.

EAGLE ROCK FIELD SERVICES, LP,
EAGLE ROCK OPERATING, LP, and
EAGLE ROCK PIPELINE GP, LLC,

                Defendants.

U.S.D.C. S.D.N.Y.
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 30, 2013

12 Civ. 3610 (PAC)

**MEMORANDUM OPINION
AND ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

       This litigation is a dispute between sophisticated parties arising out of the sale of claims in a corporate bankruptcy proceeding. Plaintiff SPCP Group, LLC ("Plaintiff" or "SPCP") paid approximately $3 million to Defendants Eagle Rock Field Services, LP ("ERFS") and Eagle Rock Operating, LP ("EROP") (collectively, with their general partner Eagle Rock Pipeline GP, LLC ("ERPG"), "Eagle Rock" or "Defendants") for the rights to claims worth around $3.9 million. When these claims were ultimately reduced in the bankruptcy proceeding and Eagle Rock refused SPCP's demand to cover the shortfall, SPCP sued, asserting breach of the contracts assigning the claims. At the core of this dispute is the meaning and scope of a carve-out provision contained in the assignment contracts (the "Assignments"). On the basis of this provision, Eagle Rock moves to dismiss SPCP's complaint (the "Complaint," ECF No. 1).

       For the reasons stated below, Eagle Rock's motion to dismiss is GRANTED.

## BACKGROUND

**A.   Facts**[1]

       1.   SemCrude's Bankruptcy

---

[1] The following facts are drawn from the allegations in the Complaint and are assumed to be true for the purposes of the motion to dismiss. See McCall v. Chesapeake Energy Corp., 817 F. Supp. 2d 307, 310 (S.D.N.Y. 2011).

ERFS and EROP sell oil and gas products, including condensate. (Compl. ¶ 10.) On July 22, 2008, SemCrude, a company to which Eagle Rock sold condensate, filed for bankruptcy protection pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq*. (Id. ¶¶ 10–13.) On January 28, 2009, ERFS and EROP filed proofs of claim for approximately $3.4 million and $640,000 respectively, against SemCrude pursuant to Section 503(b)(9) of the Bankruptcy Code, under which a creditor may file an administrative expense claim for the value of goods delivered to a debtor in the twenty days prior to the filing of a Chapter 11 petition. (Id. ¶¶ 13–14.) These claims are known as "twenty-day claims" and are given priority in the bankruptcy process over general unsecured claims. (Id.) On July 17, 2009, SemCrude filed a Notice of Filing of 503(b)(9) Notices, which identified ERFS and EROP's claims. (Id. ¶ 15; see In re SemCrude, L.P. et al., No. 08-11525 (BLS) (Bankr. D. Del.), ECF No. 4660, Ex. 3 at 9.)

The same day, the Delaware Bankruptcy Court overseeing SemCrude's bankruptcy case entered an order establishing the procedures for resolution of contested issues of law for all of the twenty-day claims filed pursuant to 11 U.S.C. § 503(b)(9). (Compl. ¶ 17; see In re SemCrude, L.P. et al., No. 08-11525, ECF No. 4645.) Pursuant to these procedures, on August 6, 2009, Bank of America ("BofA"), acting as administrative agent, filed its global objections to the allowance of all the twenty-day claims identified on SemCrude's 503(b)(9) notice, a blanket objection to all of the twenty-day claims on the basis that each creditor be required to prove its respective claim through individualized facts after the Bankruptcy Court determined the threshold issues of law (the "8/6/09 Global Objections"). (Compl. ¶ 18; see In re SemCrude, L.P. et al., No. 08-11525, ECF No. 5052.)

        2.      The Assignments

On August 7, 2009, ERFS assigned its twenty-day claim for the amount of $3,298,892.08 to SPCP.  (Compl. ¶ 19.)  On August 11, 2009, EROP assigned its twenty-day claim for the amount of $616,146.75 to Longacre Opportunity Fund, L.P. ("Longacre"), which subsequently assigned the claim to SPCP, incorporating all of the terms set forth in the EROP-Longacre assignment.  (Id. ¶¶ 20–21.)  Collectively, the Assignments constitute the contracts at issue in this case.  (See Compl. Exs. A–C.)

The Assignments each contained a clause wherein the "Seller . . . represents and warrants that: (a) the Claim is a valid, liquidated and undisputed and non-contingent administrative claim as defined in section 503(b)(9)" for "at least the amount of" $3,298,892.08 and $616,146.75, respectively.  (Compl. ¶¶ 22, 24; id. Ex. A § 4(a); id. Ex. B § 4(a); see id. Ex. C. § 2.)  The Seller representations and warranties continued, and provided that:

> As such, . . . (n) except for the Objection filed by the Official Committee of Unsecured Creditors to Allowance of All Scheduled and Filed Claims Pursuant to Section 503(b)(9) of the Bankruptcy Code and Granting Related Relief [Docket No. 2266] and the Objection to the Twenty Day Claims on Schedule E of Each of the Debtor's Schedules of Assets and Liabilities [Docket No. 2246] (***collectively and with any supplements or amendments the "Global 503(b)(9) Objections to 20 Day Claims"***), no objection to the Claim has been filed or threatened[.]  (Id. ¶ 26; id. Ex. A § 4(n); id. Ex. B § 4(n) (emphasis added).)

In addition, the Assignments each contained a clause providing that:

> In the event (a) a motion, complaint, application, plan of reorganization, or other pleading (***excluding the Global 503(b)(9) Objections to 20 Day Claims and any Action with respect to the Disputed Administrative Claim***) (an "Action") is filed in the Case seeking to reduce, offset, disallow, or subordinate under section 510 of the Bankruptcy Code, all or part of the Minimum Claim Amount or seeking to treat the Claim less favorably than other administrative expense claims as defined in section 503(b)(9) of the Code, including in the timing of payments or distributions; . . . then "(a)" . . . shall be considered an "Impairment."  (Id. ¶ 25; id. Ex. A § 7; id. Ex. B § 7 (emphasis added).)

In the event of an Impairment, the same clause of each Assignment provided that the "Seller, at Buyer's option and only upon Buyer's demand, shall repurchase, within five (5) business days of Buyer's demand, only that portion of the Claim that is subject to the proposed reduction, disallowance, setoff, or subordination," together with other costs as set out in the Assignment.  (Id. ¶ 27; id. Ex. A § 7; id. Ex. B § 7.)  Moreover, the Assignments stated that such "demand by Buyer that Seller repurchase an Impaired Claim shall not be deemed an election of remedies or any limitation on any other rights that Buyer may have hereunder or under applicable law."  (Id. ¶ 28; id. Ex. A § 7; id. Ex. B § 7.)    Furthermore, the Assignments provided that "Seller agrees to indemnify Buyer from all losses, damages and liabilities, . . . which result from Seller's breach of any representation, warranty or covenant set forth herein, or any Impairment of the Claim."  (Id. ¶ 29; id. Ex. A § 9; id. Ex. B § 9.)

### 3. The Claimed Impairment

On October 14, 2009, after receiving supporting and opposition papers from BofA and the claimholders, respectively, relating to the 8/6/09 Global Objections, the Bankruptcy Court entered an order holding that the 11 U.S.C. § 503(b)(9) claimholders, including ERFS and EROP, had established *prima facie* validity of their twenty-day claims, and providing BofA 120 days in which to file "individualized objections" to the pending twenty-day claims.  (Id. ¶¶ 30– 31; see In re SemCrude, L.P. et al., No. 08-11525, ECF No. 6042.)  BofA filed its "First Substantive Objection to Other Twenty-Claims Against the Debtors" on February 11, 2010 (the "2/11/10 Objections"), including objections to the claims of ERFS and EROP on the grounds that SemCrude did not receive the condensate on which their claims were based.  (Compl. ¶¶ 32– 33; see In re SemCrude, L.P. et al., No. 08-11525, ECF No. 7279-2 at 2.)  SPCP asserts that the

objections against the claims of ERFS and EROP contained within the 2/11/10 Objections constitute an Impairment pursuant to Section 7 of the Assignments. (Compl. ¶¶ 34, 35.)

Ultimately, in May and June 2011, BofA, SemCrude, and SPCP entered into a settlement agreement whereby SPCP received a cash payment and a general unsecured claim for the twenty-day claims of ERFS and EROP that were assigned to SPCP. (Id. ¶¶ 36–38.) After this settlement, there remained a shortfall between the payment SPCP received and the amount of the claims that SPCP had purchased from Eagle Rock. (Id. ¶ 39.) Pursuant to Section 7 of the Assignments, SPCP made a demand on Eagle Rock for payment of the repurchase amount of $180,429.36 plus interest, attorneys' fees, and costs. (Id. ¶ 40.) Eagle Rock refused SPCP's demand and SPCP brought this action. (Id. ¶ 42.)

### B.   Defendants' Arguments

Eagle Rock argues that the 2/11/10 Objections were supplements or amendments to the prior objections BofA filed in the Bankruptcy Court, and thus, pursuant to Section 4(n) of the Assignments, are excluded from the definition of "Impairment" under Section 7 of the Assignments. Specifically, Eagle Rock argues that the language of the Assignments establishes none of the limitations on this carve-out provision that SPCP proposes, and that the 2/11/10 Objections were merely an additional filing in an ongoing objections process in the Bankruptcy Court proceedings, which the Bankruptcy Court and the parties had contemplated. With regard to the Bankruptcy Court proceedings, Eagle Rock argues that the process of filing and objecting to the twenty-day claims (including the 2/11/10 Global Objections) proceeded in an orderly fashion established by the Bankruptcy Court and understood by the parties:

- On September 15, 2008, the Bankruptcy Court issued an "Order Establishing Procedures for the Resolution of Administrative Claims Asserted Pursuant to Section 503(b)(9) of the Bankruptcy Code and Regarding Payments for Post-Petition Purchases" requiring SemCrude to list its estimated twenty-day claim

liabilities and providing thirty days for objections.  (In re SemCrude, L.P. et al., No. 08-11525, ECF No. 1376.)

- On October 20, 2008, SemCrude filed its list on Schedule E, identifying Eagle Rock's twenty-day claims.  (In re SemCrude, L.P. et al., No. 08-11525, ECF No. 1805.)

- On November 19, 2008, BofA filed objections to all of the twenty-day claims listed on SemCrude's Schedule E (the "11/19/2008 Global Objections"), arguing that "each Twenty Day Claim must be resolved through the individualized claims allowance process contemplated by the" September 15, 2008 order, and that "to qualify for a section 503(b)(9) administrative expense, the goods must have been . . . 'received' by a debtor within twenty days of the commencement of this case." (In re SemCrude, L.P. et al., No. 08-11525, ECF No. 2246 ¶¶ 6, 13.)

- On July 17, 2009, the Bankruptcy Court entered an "Order Establishing Procedures for the Resolution of Contested Issues of Law Related to the Twenty Day Claims Under Section 503(b)(9)," which defined the term "Global 503(b)(9) Objections to 20 Day Claims" to include the 11/19/2008 Global Objections filed by BofA (and the Unsecured Creditors Committee (UCC)) "collectively and with any supplements" despite the fact that neither BofA nor the UCC had yet filed any supplements to the 11/19/2008 Global Objections, and which ordered BofA to file a memorandum in support of the 11/19/2008 Global Objections.  (In re SemCrude, L.P. et al., No. 08-11525, ECF No. 4645 at 1–2.)

- BofA then filed the 8/6/2009 Global Objections, which argued that "[i]individual objections to each Twenty Day Claim should take place in the claims resolution process . . . but in all events only after resolution of the [i]ssues of [l]aw," and noted that "the [Bankruptcy] Court has established a protocol to permit parties in interest to brief and argue issues of law . . . [and i]t is contemplated . . . that fact-based objections to particular Twenty Day Claims be deferred until after the Court has ruled on the legal requirements for valid" Section 503(b)(9) claims.  (In re SemCrude, L.P. et al., No. 08-11525, ECF No. 5052 ¶¶ 10, 15.)

- On August 7, 2009, BofA filed a memorandum of law in support of the 11/19/2008 Global Objections and the 8/6/2009 Global Objections, arguing that the goods at issue needed to be "received" within twenty days of the bankruptcy petition, and that "each Claimant is required to establish that either the applicable Debtor or its bailee took actual, physical possession" of the goods subject to each twenty-day claim.  (In re SemCrude, L.P. et al., No. 08-11525, ECF No. 5105 at 9.)

- On October 7, 2009, the Bankruptcy Court issued a memorandum ruling that the twenty-day claimholders, including Eagle Rock, had met their *prima facie* burden of proof of validity, and provided BofA "an opportunity to supplement is pending objections . . . to the Twenty-Day Claims to raise 'fact-specific' objections."  In re

6

SemCrude, 416 B.R. 399, 401 (Bankr. D. Del. 2009).  In an Order dated October 14, 2009, the Bankruptcy Court adopted the October 7, 2009 rulings and set the schedule for such briefing.  (In re SemCrude, L.P. et al., No. 08-11525, ECF No. 6042.)

- Pursuant to the Bankruptcy Court's October 2009 rulings, BofA filed the 2/11/10 Objections, asserting fact-specific objections to Eagle Rock's 503(b)(9) claims that the goods were not received by SemCrude, and incorporating the arguments it made in its August 7, 2009 memorandum of law.  (In re SemCrude, L.P. et al., No. 08-11525, ECF Nos. 7277, 7279-2.)

Read in light of this procedural history, Eagle Rock argues that the phrase "any supplements or amendments" in the Assignments' definition of "Global 503(b)(9) Objections to Twenty Day Claims" unambiguously anticipates and includes the 2/11/10 Objections.  As such, Eagle Rock argues that SPCP's causes of action are precluded by the Assignments' exclusion.

### C.    Plaintiff's Argument

SPCP asserts that the Bankruptcy Court's October 2009 orders definitely resolved BofA's prior objections, and that the 2/11/10 Objections were entirely new, fact-specific objections that were not supplements or amendments to the prior objections, and are thus not excluded from the definition of what may constitute an "Impairment" under Section 7 of the Assignments.  In addition, SPCP argues that even if the 2/11/10 Objections are covered by the exclusion of claims relating to "Impairments," its indemnification and breach of representations and warranties claims survive as independent claims, free of the Assignments' exclusion.

## ANALYSIS

### I.    LEGAL STANDARDS

#### A.    Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept a complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). The Court, however, need not accept as true "legal conclusions, deductions[,] or opinions couched as factual allegations." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (quotations omitted). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. In addition, "[t]he [C]ourt need not accept as true an allegation that is contradicted by documents on which the complaint relies." Williams v. Citibank, N.A., 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008) (citations omitted).

In deciding a 12(b)(6) motion, the Court may "properly consider 'matters of which judicial notice may be taken, or documents either in plaintiff[']s possession or of which plaintiff[] had knowledge and relied on in bringing suit.'" Halebian v. Berv, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (quoting Chambers, 282 F.3d at 153). In particular, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998).

**B.   New York Contract Law**

Each Assignment at issue provides that: "This Assignment shall be governed by and construed in accordance with the law of the State of New York, without giving effect to any choice of law principles thereof." (Compl. Ex. A § 11, id. Ex. B § 11, id. Ex. C. §13.)

"Under New York law, a contract 'that is clear, complete, and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties.'"  Landmark Ventures, Inc. v. Wave Sys. Corp., No. 11 Civ. 8440 (PAC), 2012 WL 3822624, at *3 (S.D.N.Y. Sept. 4, 2012) (quoting Brad H. v. City of New York, 951 N.E.2d 743, 746 (N.Y. 2011)).  The threshold question of whether a contract is ambiguous is a question of law for the Court.  See Diesel Props S.r.L. v. Greystone Business Credit II LLC, 631 F.3d 42, 51 (2d Cir. 2011) (applying New York law).  Likewise, construction of an unambiguous contract is a matter of law, which may be determined by the Court on a motion to dismiss.  See Beal Sav. Bank v. Sommer, 865 N.E.2d 1210, 1213 (N.Y. 2007).

"A contract is ambiguous if the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."  Banco Espirito Santa, S.A. v. Concessionária do Rodoanel Oeste S.A., 951 N.Y.S.2d 19, 24 (1st Dep't 2012) (quotations omitted); see also Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 178 (2d Cir. 2004) ("Ambiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." (internal quotation marks omitted)).  "Ambiguity is determined by looking within the four corners of the document, not to outside sources."  Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F.3d 63, 69 (2d Cir. 2011) (quotations omitted).  A contract is not ambiguous merely because the parties to a litigation disagree about its interpretation.  See Coleman Co. Inc v. Hlebanja, No. 96 Civ. 1288 (MBM), 1997 WL 13189, at *4 (S.D.N.Y. Jan. 15, 1997); Slattery Skanska Inc. v. Am. Home Assurance Co., 885 N.Y.S.2d 264, 274 (1st Dep't 2009).  In addition,

"extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." R/S Assoc. v. New York Job Dev. Auth., 771 N.E.2d 240, 242 (N.Y. 2002) (quotations omitted).

The Court must construe a contract "so as to give full meaning and effect to the material provisions," and the Court's "reading of the contract should not render any portion meaningless." Beal Sav. Bank, 865 N.E.2d at 1213 (internal citations omitted). The Court must avoid interpreting a contract in a manner that would be "absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties." Landmark Ventures, 2012 WL 3822624, at *3 (quoting In re Lipper Holdings, LLC, 766 N.Y.S.2d 561, 561 (1st Dep't 2003)).

Where a contract is ambiguous, dismissal on a 12(b)(6) motion is inappropriate. See Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 56 (2d Cir. 2012); Eternity Global Master Fund, 375 F.3d at 178.

## II. THE ASSIGNMENTS ARE UNAMBIGUOUS

### A. The Language of the Assignments

Eagle Rock argues that the term "any supplements or amendments" in the definition of "Global 503(b)(9) Objections to 20 Day Claims" in the Assignments is unambiguous as a matter of law and should be construed to include the 2/11/10 Objections that SPCP contends create an Impairment on its claims. Under Eagle Rock's reading, "any" means "all" or "every" supplement without temporal limitation, and "supplement" means an addition or something that completes. (Mem. of Law in Supp. at 14–15, ECF No. 14 (citing, *inter alia*, Zion v. Kurtz, 405 N.E.2d 681, 687 (N.Y. 1980) ("As we have held . . . the word 'any' means 'all' or 'every' and imports no limitation." (citations omitted)).) Eagle Rock argues this interpretation is in line with the clear language of the Assignments and is supported by other language in the surrounding

10

provisions, which reference potential future objections. (Id. at 15–16.) As an example, Eagle Rock notes that Section 4(n) provides that "no objection to the Claim has been filed or threatened," indicating that the parties intended the carve out to exclude future objections. Similarly, Eagle Rock notes that Section 4(o) provides that "the Claim is not subject to any defense, claim or right of setoff, reduction, impairment, avoidance, disallowance, subordination or preference action . . . that have been or may be asserted." Eagle Rock states that if a more specific or temporal limitation was intended by this language, the parties would have included language to this effect. (Id.)

SPCP contends that the phrase "any supplements or amendments" only covers objections that were filed as of the date of the Assignments, or, at most, after the Assignments were executed, but only if the subsequent objections did not add any new content or change the 11/19/2008 Global Objections or 8/6/2009 Global Objections. (Opp'n at 17–23, ECF No. 17.) SPCP thus argues that the Assignments are ambiguous and dismissal unwarranted at this stage.

SPCP's interpretation strains the language in the Assignments beyond its reasonable and ordinary meaning. See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 598 (2d Cir. 2005); Franco Apparel Grp, Inc. v. Nat'l Liability & Fire Ins. Co., No. 10 Civ. 8205 (RJS), 2011 WL 2565287, at *3 (S.D.N.Y. June 28, 1011). While Eagle Rock's interpretation is rooted in the text of the Assignments, traditional common law and lay definitions, and the context of surrounding provisions, SPCP's limitation of "any supplements or amendments" to those objections filed by the date of the Assignments—not to mention its position that subsequent objections could be included, but only if they did not alter the 11/19/2008 Global Objections or 8/6/2009 Global Objections—finds no support in the language of the Assignments. Contract language is considered ambiguous if it is susceptible to more than one reading, but

SPCP's mere say-so cannot create an ambiguity. Considering just the language of the Assignments, the Court finds the plain meaning of "any supplements or amendments" in the definition of "Global 503(b)(9) Objections to 20 Day Claims" to be unambiguous and not fairly susceptible to SPCP's interpretation.

### B. Bankruptcy Court Materials

Both parties also rely on materials filed and orders entered in the Bankruptcy Court proceedings in an effort to provide context to the Assignments and establish whether the 2/11/10 Objections fall within the scope of the carve out for "Global 503(b)(9) Objections to 20 Day Claims."

"Courts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991). "If the court takes judicial notice, it does so in order to determine what statements they contained—but again not for the truth of the matters asserted." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (quotations and alterations omitted).

Eagle Rock argues that the orders and filings in the Bankruptcy Court show that the 2/11/10 Objections were the culmination of a process in which BofA objected to the twenty-day claims in stages, and as such, should be considered a "supplement or amendment" to BofA's earlier objections. Specifically, Eagle Rock argues the 2/11/10 Objections—in which BofA argued that SemCrude never received the condensate on which ERFS and EROP's claims were predicated (Compl. ¶ 33)—were merely another step in the Bankruptcy Court process that began with the 11/19/2008 Global Objections that each twenty-day claim needed to be resolved through an individualized process, including the argument that "to qualify for a section 503(b)(9)

administrative expense, the goods must have been . . . 'received' by a debtor within twenty days of the commencement of this case." (In re SemCrude, L.P. et al., No. 08-11525, ECF No. 2246 ¶¶ 6, 13.)  Eagle Rock also notes that after SemCrude filed its list of 503(b)(9) claimants with the Bankruptcy Court (noting ERFS and EROP's claims), BofA filed the 8/6/09 Global Objections and its memorandum of law in support (Compl. ¶ 18), in which BofA argued that "each Claimant is required to establish that either the applicable Debtor or its bailee took actual, physical possession of the oil or gas that is the subject of the Twenty Day Claim at issue."  (In re SemCrude, L.P. et al., No. 08-11525, ECF No. 5105 at 9.)  Eagle Rock finally highlights that the 2/11/10 Objections at the heart of this litigation were filed in response to the Bankruptcy Court's October 2009 orders, which held that ERFS and EROP met their *prima facie* burden, and gave BofA "an opportunity to supplement its pending objections . . . to the Twenty-Day Claims to raise 'fact-specific' objections to those Twenty-Day Claims."  In re SemCrude, 416 B.R. at 401.  (See Compl. ¶ 31.)  BofA's 2/11/10 Objections refer to and incorporate its earlier arguments in the 11/19/2008 Global Objections and the 8/6/2009 Global Objections and memorandum of law that the goods must have been "received" for the twenty-day claims to be valid, and provided specific factual support for why ERFS and EROP's claims did not qualify.  (See In re SemCrude, L.P. et al., No. 08-11525, ECF Nos. 7277 at 5–7, 7279.)

    SPCP argues that the 2/11/10 Objections were not supplements or amendments to BofA's earlier objections because they constituted factual objections to individual claims and were not blanket legal objections as asserted previously.  (SPCP also relies on the rather flimsy argument that because BofA denominated its 2/11/10 Objections its "First Substantive" objections, this establishes that they do not constitute a supplement or amendment to the previously filed objections.)  However, SPCP's position that the 2/11/10 Objections were "entirely new

13

objections" (Compl. ¶ 32) is contradicted by its argument that BofA's two previous rounds of objections were blanket legal objections designed "to preserve [BofA's] right to challenge any particular twenty-day claim until it decided to do so after conducting discovery." (Opp'n at 20.) SPCP's concession that the prior objections were made in order to preserve later rights relating to the same twenty-day claims belies SPCP's assertion that the prior objections were not related to the 2/11/10 Objections, and supports Eagle Rock's position that they were merely the culmination of the objection process set forth by the Bankruptcy Court and considered by the parties when they entered into the Assignments. In addition, the fact that BofA, in the 2/11/10 Objections, explicitly referred to and incorporated the arguments made in the previous objections further undermines SPCP's argument that the objections are unrelated.

The materials filed in the Bankruptcy Court proceedings add further support to Eagle Rock's interpretation of the Assignment language. In light of these materials, and the plain language of the Assignments, the Court finds that the Assignments are unambiguous and construes the phrase "any supplements or amendments" in Section 4(n) in the definition of Global 503(b)(9) Objections to 20 Day Claims to include the 2/11/10 Objections. Accordingly, the 2/11/10 Objections cannot from the basis for an Impairment.

### III.   THE SCOPE OF THE EXCLUSION

Having held that the Assignments are unambiguous and that the 2/11/10 Objections cannot form the basis for an Impairment, the Court must address whether the language of Section 4(n) precludes each of SPCP's causes of action here. Section 4 must be read in its entirety. The general warranty language of Section 4(a) is expressly limited by the exception carved-out in Section 4(n). If the Court is to "give full meaning and effect to the material provisions," and make sure that its "reading of the contract [does] not render any portion meaningless," <u>Beal Sav.</u>

Bank, 865 N.E.2d at 1213, the limitation in Section 4(n) must apply to the warranties that preceded it in Section 4(a). As Eagle Rock notes, the subparagraphs are connected with the conjunction "and," signifying that these provisions together modify and delimit the representations and warranties in Section 4(a). It would be an unreasonable reading of the Assignments to separate each of Section 4's provisions and allow the general warranty language to form a separate basis for a claimed breach, independent from the limitations set forth subsequently in the same section. This is particularly so given that the representations Eagle Rock made that each claim was "undisputed" is contained in the same paragraph that includes the exception for claims subject to the Global Objections at issue *supra*.

Accordingly, each of SPCP's causes of action are precluded by the exclusion provision in Section 7 of the Assignments.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's Complaint is dismissed. The Clerk of Court is instructed to enter judgment and terminate this case.

Dated: New York, New York
       January 30, 2013

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge